# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-KA-01966-SCT

*ELLIOT CULP*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/20/2002 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | IMHOTEP ALKEBU-LAN |
| | CHOKWE LUMUMBA |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | JAMES H. POWELL, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/15/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., CARLSON AND RANDOLPH, JJ.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Elliot Culp was tried by a Holmes County Circuit Court jury on a multi-count indictment for forcible rape, armed robbery, kidnaping, arson, aggravated assault, conspiracy to commit an armed robbery, and capital murder while in the commission of felonious abuse of a child. On February 18, 2002, he was found guilty of all counts except capital murder, and was sentenced to serve sixty years incarceration in the Mississippi Department of Corrections. The trial court subsequently denied Culp's motions to quash the indictment, for J.N.O.V. and

alternately, for a new trial. On appeal, we conclude that there is no merit to the issues raised by Culp, and we affirm the judgment of the Holmes County Circuit Court.

**FACTS**

¶2. On the evening of February 28, 2000, Jane Doe[1], and Allen Scott, were found severely beaten and in critical condition on the side of the road near Durant, Mississippi. Earlier that day, a rest stop security officer had seen them and bought them bus tickets to return to their homes in Texas. Later that day, Durant police officer Howard Harrison saw Doe and Scott at the bus stop with Culp and Travis Lowe.

¶3. Culp and Lowe took Scott and Doe out into the country, brandished a pistol which had been taken from Lowe's sister's home, and demanded $5,000 which Scott was rumored to have stolen from someone in Texas. When told that they did not have any such money, Culp forced Scott out of the car and held the gun to his head while Lowe raped Doe. Culp also raped her, then burned Scott and Doe's clothing, and cut Scott's throat and Doe's side with a knife. Before leaving the scene, Culp beat Scott, and Lowe beat Doe with a baseball bat. Then Culp and Lowe drove away, leaving Doe and Scott on the side of the road.

¶4. Two people passing by called an ambulance after they saw the bodies and fire. Scott and Doe were transported to the hospital where Scott later died from lethal blunt force trauma to the skull. Doe was in a coma but later regained consciousness and recovered.

¶5. Since he had last seen the victims with Culp and Lowe, Officer Harrison and another officer went to Culp's house where they briefly spoke with Culp's mother and then asked Culp to come down to the police station to discuss his relationship with the victims. While at the

---

[1]We use a fictitious name for the minor rape victim.

police station Culp's mother brought him fresh clothing and the clothes he was wearing were taken. The officers obtained a warrant for a blood sample from Culp and Lowe, and subsequently DNA from blood spots on Culp's shirt and shoes was found to be consistent with Doe's DNA. DNA evidence from Culp was also found on a vaginal swab taken from Doe.

¶6. In exchange for leniency in sentencing, Lowe confessed to officials that he and Culp committed the attacks on Doe and Scott as part of a robbery. Culp's statement was that he left Doe and Scott at the bus station. He also said he did have intercourse with Doe, but it was consensual.

### PROCEDURAL HISTORY

¶7. On March 20, 2000, a Holmes County grand jury indicted Culp and Lowe on thirteen counts.[2] As to Culp, two of the counts were quashed.[3] The trial court granted Culp's pretrial motion to suppress in-court identification by Doe. Culp also moved to suppress the other evidence, arguing that it was obtained from an illegal arrest at Culp's home. The trial judge denied this motion, finding that Culp was not arrested at that time and that the police had probable cause to seize the evidence.

---

[2] Count I, conspiracy to commit robbery; Count II, forcible rape; Count III, forcible rape; Count IV, robbery by exhibition of a deadly weapon on Scott; Count V, robbery by exhibition of a deadly weapon on Doe; Count VI, kidnapping of Scott; Count VII, kidnapping of Doe; Count VIII, aggravated assault on Scott by stabbing him in the neck with a knife; Count IX, aggravated assault on Doe by cutting her with a knife; Count X, aggravated assault on Doe by beating her with a bat; Count XI, third degree arson on the clothing of Doe; Count XII, third degree arson on the clothing of Scott; Count XIII, capital murder by felonious abuse of a child on Scott.

[3] Counts III, forcible rape and X, aggravated assault on Doe by beating her with a bat, were quashed. These counts were removed, and the indictment renumbered by the circuit court.

¶8. At the close of the State's case, Culp moved for a directed verdict on all counts, and the trial court granted only one, being robbery by exhibition of a deadly weapon. On March 20, 2002, the jury returned a verdict of guilty on all counts of the indictment except Count X, capital murder by felonious abuse of a child, and Culp was sentenced to sixty years in the custody of the Mississippi Department of Corrections.

¶9. Culp subsequently filed a motion to quash the indictment, alleging that two members of the grand jury were "interested." After conducting a two-day hearing, during which numerous members of the grand jury were questioned, as well as the county prosecutor, the trial court denied Culp's motion, finding that the presence of the two grand jurors did not violate Culp's rights. Culp appeals and asserts the following errors:

I. The circuit court erred in denying Culp's motion to suppress evidence obtained via an unlawful arrest and search.

II. The circuit court erred in denying Culp's motion to suppress Officer Harrison's identification of Culp.

III. The circuit court erred in denying Culp's motion for a directed verdict.

IV. Culp was convicted based upon inconsistent jury verdicts.

V. Culp was denied due process because he was convicted of multiplicitous counts.

VI. Culp's rights to a fair trial and due process of law were violated because he was indicted by an improperly composed grand jury.

VII. Culp's right to due process of law was violated because the prosecutor failed to comply with discovery pursuant to *Brady v. Maryland*.

VIII. The cumulative impact of the errors violated Culp's right to a fair trial.

## ANALYSIS

4

## I. DENIAL OF CULP'S MOTION TO SUPPRESS EVIDENCE.

¶10.   In determining whether the issuance of a search warrant is proper, an appellate court will review the trial judge's decision to determine whether there was a substantial basis for concluding that probable cause existed.  *Petti v. State*, 666 So. 2d 754, 757 (Miss. 1995) (citing *Illinois v. Gates*, 462 U.S. 213, 238-39, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983)).   The reviewing court will overturn the trial court if there is an absence of substantial credible evidence to support the issuance of the search warrant.  *Magee v. State,* 542 So. 2d 228, 231 (Miss. 1989).

¶11.   Culp asserts that the search warrant for a blood sample violated his rights in three ways: (1) it was based on an illegal arrest made in Culp's home without an arrest warrant or exigent circumstances;   (2) by surrendering his clothes, he was required to make a statement in violation of *Miranda v. Arizona,*   384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d  694 (1966); and (3) the search warrant was based on evidence which did not amount to probable cause. Our review of the record reveals otherwise.

### 1. Whether the Police Illegally Arrested Culp at his Home

¶12.   Culp relies on *Welsh v. Wisconsin,* 466 U.S. 740, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984), in support of his illegal arrest argument.  His reliance is misplaced, however, because *Welsh* is clearly distinguishable on its facts.   Police officers entered Welsh's home, without a warrant or consent, and found him lying naked in his bed.   They placed him under arrest for driving while under the influence of an intoxicant. The Supreme Court held that a nighttime entry into Welch's home to arrest him for a civil traffic offense was "clearly prohibited by the special protection afforded the individual in his home by the Fourth Amendment."  *Id.* at 754.

5

¶13. We have found that "arrest" means the "taking into custody of another person by an officer . . . for the purpose of holding him to answer an alleged or suspected crime." ***Blue v. State***, 674 So. 2d 1184, 1202 (Miss. 1996). Someone who voluntarily accompanies the police to another location for questioning has not been arrested. ***Id.*** We have also held that the test for determining when a person is "in custody" is whether a reasonable person would feel that they were going to jail and not just being temporarily detained. ***Godbold v. State,*** 731 So. 2d 1184, 1187 (Miss. 1999). Ultimately this means whether a reasonable person felt they had the freedom to refuse police demands. ***Id***. The United States Supreme Court has held that one does not have to be affirmatively told that they had the right to refuse for their actions to be voluntary. ***Schneckloth v. Bustamonte***, 412 U.S. 218, 234, 93 S. Ct. 2041, 2051, 36 L. Ed. 2d 854 (1973). This Court has held that the voluntariness of an accused's consent is based on the "totality of the circumstances" including among other things: the location of the encounter, any overt coercion, the display of weapons, experience of the defendant with the criminal justice system, and the defendant's age. ***Jones v. State ex rel. Miss. Dep't of Pub. Saf'y***, 607 So. 2d 23, 27 (Miss. 1991).

¶14. Culp's assertion that he was arrested at his home is not borne out by the record, which clearly indicates that the officers were there to speak to him because he and Lowe were the last people seen with the victims. The officers did not arrest Culp at that time, and in fact, told

6

Culp's mother that they merely wanted to question him.[4] Culp agreed to accompany the officers to the police station.

¶15. When the officers asked Culp to go with them to the police station, they were doing so to further a general investigation and not to hold Culp to answer for a specific crime. It was not until later that the evidence against Culp indicated his involvement in the assault of one victim and the assault and rape of the other. At all times Culp remained free to refuse to go with the officers. Although they did not tell Culp that he had the right to refuse, under *Schneckloth* they were not obligated to do so. Further, the fact that the two officers were armed does not make Culp's consent involuntary. They did not display their weapons or indicate that they were present at Culp's home for the purpose of arresting him, or that force would be used against him. Officer Harrison merely asked Culp to come to the police station to answer questions regarding his relationship with the victims. In *Jones*, we clearly illustrated that the presence of armed police does not itself make consent involuntary, but is rather part of the "totality of the circumstances" to be considered. *Jones,* 607 So. 2d at 27. Also, Culp had experience with police investigations, because he had previously been indicted for another crime.

### 2. Whether Taking Culp's Clothes Violated the Fifth Amendments

¶16. At the police station, Chief Eskridge escorted Culp into his office, where they talked while waiting for Sheriff March to arrive. While they were talking, Culp asked the Chief, without being prompted, whether he should remove his clothing and surrender it to the police.

---

[4] This was overheard by Culp, who was not present at the door, because his first statement to the police prior to being questioned was that he was not present at the Amigo Mart, rather he was at ball practice.

7

Eskridge responded that he probably should do so, but did not compel Culp to surrender his clothing.

¶17.    Eskridge did not know that Sheriff March, while en route from the crime scene to the station,  had spoken to someone and suggested that Culp's clothes needed to be examined.[5] After the Sheriff arrived at the police station, he took the clothes which Culp had removed, and placed them into an evidence bag.    While doing this, he noticed red spots which appeared to be blood on them.    At trial, the Sheriff acknowledged that Culp would not have been free to leave until he had an opportunity to speak with him and that Culp was represented by counsel.    The record is silent as to whether Culp did, or did not, ask to leave.

¶18.    The Fifth Amendment secures the right to have an attorney present if requested by individuals  subject to "custodial interrogation." *Godbold*, 731 So. 2d at 1187 (citing *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981)).  If the right to an attorney is denied or questioning continues without an attorney present after the accused has requested one, then the prosecution is prohibited from using any resulting statements.  *Miranda,* 384 U.S. at 444.

¶19.    To be subject to "custodial interrogation" one must be both in custody and undergoing interrogation.    One is in custody if a reasonable person would find their ability to freely leave restricted.    *Id*.    Interrogation does not mean only questioning but rather questioning and its

---

[5]    The Sheriff testified that he believed that since the crime scene was bloody that anyone connected to the commission of the crime might have blood on them.  He only knew that Culp was last seen with the victims by Officer Harrison.

"functional equivalent." *Pierre v. State,* 607 So. 2d 43, 52 (Miss. 1992). The United States Supreme Court has defined "functional equivalent" to mean words or actions that the police should know are reasonably likely to elicit an incriminating response. *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S. Ct. 1682, 1690, 64 L. Ed. 2d 297 (1980).

¶20.    In order for statements from a "custodial interrogation" to be admissible under the Fifth Amendment they must be preceded by proper *Miranda* warnings. *Godbold*, 731 So. 2d at 1188. The use of statements given in response to police questioning will violate the Fifth Amendment if conducted in the absence of an attorney after the accused has specifically invoked the right to have one. *Holland v. State*, 587 So. 2d 848, 856 (Miss. 1991).

¶21.    The Fifth Amendment privilege against self-incrimination applies only to testimonial evidence and not to real or physical evidence. *Upshaw v. State*, 350 So. 2d 1358, 1364 (Miss. 1997). In *Upshaw,* this Court held that clothing is not testimonial evidence and therefore the Fifth Amendment privilege against self-incrimination will not bar its introduction at trial. *Id.* Use of Culp's clothing did not violate the Fifth Amendment privilege against self-incrimination because it was not testimonial. Clothing, as we stated in *Upshaw*, is physical evidence and not a statement. Further, at the time that Chief Eskridge told Culp that he should probably surrender his clothing, Culp was not under custodial interrogation. The exchange between Culp and Eskridge was initiated by Culp and not by the police, and lasted only long enough for Eskridge to reply to Culp's direct inquiry. It did not result in Eskridge asking any questions of Culp or taking any statements from him.

9

¶22.   The facts indicate that Culp voluntarily surrendered his clothing to Chief Eskridge without police compulsion.   Voluntary consent eliminates the warrant requirement.  *Morris v. State,* 777 So. 2d 16, 26 (Miss. 2000).   When the State relies on consent to justify a seizure, the State must prove that it was voluntarily given and not the product of coercion or duress. *Jackson v. State,* 418 So. 2d 827, 830 (Miss. 1982).  The *Jones* Court stated that the trial court must look at the totality of the circumstances to determine if consent was voluntary.  *Jones,* 607 So. 2d at 27.

¶23.   Looking at the circumstances, it is clear that Culp's consent was voluntary.   At the time he removed his clothing he was not confronted with police coercion.   He did not object, but quietly sat by while the Sheriff placed his clothes in a bag.   In the absence of coercion,  Culp's voluntary behavior and silence means that he consented to the taking, and thus there was no violation of his Fifth Amendment rights.

### 3. Whether there was Probable Cause to Issue the Search Warrant

¶24.    If the police require an accused to submit a blood sample, probable cause must exist to prove that the accused committed a crime.  *McDuff v. State*, 763 So. 2d 850, 854 (Miss. 2000). In order for the police to be granted a search warrant they must demonstrate to the judge evidence of underlying facts and circumstances necessary to provide a substantial basis for finding probable cause. *Petti*, 666 So. 2d at 757.

¶25.   In the present case the police presented Judge Lewis with the following evidence:

> 1) an aggravated assault of two victims occurred in Holmes County leaving both in critical condition and unconscious;
> 2) a large amount of blood was present at the crime scene;

3) a police officer saw defendants Culp and Lowe talking with the victims earlier that evening;

4) Sheriff March had observed spots on Culp's clothes and on Lowe's shoe that appeared to be blood; and

5) the crime scene had an imprint of tennis shoe similar to Lowe's shoe.

Such evidence gives rise to a substantial basis for concluding that probable cause exists. The trial judge did not err in issuing a warrant to have a sample of Culp's blood taken.

## II. DENIAL OF MOTION TO SUPPRESS IDENTIFICATION EVIDENCE.

¶26. When reviewing a trial court's ruling on the admission or suppression of evidence, this Court must assess whether there was substantial credible evidence to support the trial court's findings. *Magee*, 542 So. 2d at 231. The admission of evidence lies within the discretion of the trial court and will be reversed only if that discretion is abused. *Crawford v. State,* 745 So. 2d 1211, 1215 (Miss. 2000).

¶27. Culp claims that the trial court erred in admitting Officer Harrison's hearsay testimony that Doe told him that she left the Amigo Mart in a car with the same two men with whom he had seen her earlier. Culp asserts that even if M.R.E. 801(d)(1)(C) is applicable, he was constructively denied the ability to cross-examine Doe because to do so would have been inculpatory.

¶28. After Doe regained consciousness, Sheriff March showed her two photo lineups which included Culp and Lowe. At that time, she was unable to pick Culp out of the photos or remember his name. Later, Officer Harrison visited her in the hospital to speak with her about the attack and rape. At that time, she was able to identify Culp by name and picture, but admitted that this was because of the intense media coverage about her rape and assault. However, she was

able to confirm to Officer Harrison, without saying names, that she drove away from the Amigo Mart with the same two men that he had seen speaking with Scott and her earlier.

¶29. The judge ruled that Doe lacked the independent recollection required to make her identification of Culp trustworthy, finding that it was only as a result of the intense media coverage that Doe was able to recall Culp's name and image. As a result, Doe's identification could have been the product of impermissible suggestion and therefore inadmissible. However, the trial court held that Officer Harrison would be permitted to testify regarding the statement given to him, by Doe, that she drove away with the two men that Harrison had earlier seen with her and that they had raped her. The trial court reasoned Harrison had independent personal knowledge of their identity and thus did not require Doe to identify Culp and Lowe.

¶30. At trial the State questioned Officer Harrison about the statement given to him by Doe:

Q. Okay. And did you ask her [Doe] whether the same people that you saw her with at the Amigo Mart location were the same ones she left with?
A. Yes, sir....
Q. And without stating what she said to you, did she answer it?
A. Yes sir. She answered yes.

It was Officer Harrison and not Doe, who identified those two individuals as Culp and Lowe in earlier testimony. Defense counsel objected to the testimony as hearsay. The trial court overruled the objection.

¶31. The trial court correctly granted Culp's motion to suppress Doe's identification of him after she saw his name and picture on the internet and television. Thus, the sole determination for this Court is whether the trial court's admission of Doe's statement to Officer Harrison was error. We hold that as an identification, the statement was admissible under M.R.E. 801(d)(1)(C). Defense counsel had the opportunity to cross-examine the hearsay declarant after

the statement was admitted into testimony. The fact that counsel chose not to do so was apparently part of trial strategy. Counsel should not be allowed to use a conscious decision at trial to now argue for reversal.

¶32. As a statement of identification, Officer Harrison was allowed to testify as to what Doe told him regarding the identity of the two attackers. *See Livingston v. State,* 519 So. 2d 1218, 1221 (Miss. 1988). The Mississippi Rules of Evidence exclude these statements from the definition of hearsay:

> (d) **Statements Which Are Not Hearsay.** A statement is not hearsay if:
>
> (1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is . . . (C) one of identification of a person made after perceiving him . . . .

M.R.E. 801(d)(1)(C). Culp concedes that the statement was an identification, but argues that the declarant was not subject to cross-examination because the style and phrasing of the direct examination constructively denied him the ability to cross-examine Doe. We find this claim to be without merit.

¶33. This Court has held that under M.R.E. 611(b) counsel conducting cross-examination is entitled to broad discretion in the subject matter of the questioning. *Craft v. State,* 656 So. 2d 1156, 1162 (Miss. 1995). The trial court has discretion to restrict that latitude when the subject matter of questioning has no relevance. *Mixon v. State,* 794 So. 2d 1007, 1013 (Miss. 2001). However, lack of relevance will be found only when the information that counsel is attempting to elicit is wholly extraneous and unprovoked by direct examination. *Black v. State,* 506 So. 2d 264, 268 (Miss. 1987). One is deprived of the right to cross-examine when the trial court fundamentally and substantially restricts it. *Murphy v. State*, 453 So. 2d 1290, 1292 (Miss.

13

1984). This Court has interpreted this to mean that the party is deprived of the opportunity without fault on their part. *Myers v. State,* 296 So. 2d 695, 701 (Miss. 1974). Counsel's active decision regarding whether or not to file certain motions, call certain witnesses, ask certain questions, and make certain objections falls within the ambit of trial strategy. *Cole v. State,* 666 So. 2d 767, 777 (Miss. 1995). The tactical choice of counsel to seek testimony on a particular subject is a personal one and not a restriction by the trial court. *Murphy*, 453 So. 2d at 1293.

¶34. In the present case, defense counsel was not deprived of the right to cross-examine Doe nor was that right restricted. Defense counsel understood that if he asked Doe about her identification, her answer would inculpate Culp. Counsel made a conscious decision not to do so. Therefore, it was trial strategy and not a restriction imposed by the trial court, and according to *Murphy*, there was no abridgement of Culp's rights. Defense counsel had the opportunity to cross-examine Doe following the testimony of Officer Harrison. Doe in her own testimony discussed the identification of the two men who raped her. Cross-examination would have been proper under M.R.E. 611(b). Defense counsel's choice not to do so is a textbook example of trial strategy and does not give rise to a denial of the right to cross-examine. The statement was not hearsay, because it falls within M.R.E. 801(d)(1)(C) as an out-of-court identification made by the declarant (Doe) after perceiving the individual (Culp), and she was available for cross-examination. Issue two is without merit.

### III. DENIAL OF CULP'S MOTION FOR A DIRECTED VERDICT.

¶35. When reviewing the denial of a motion for a directed verdict testing the sufficiency of the evidence, the appellate court does not itself have to be convinced of the guilt of the defendant. *Bush v. State,* 895 So. 2d 836, 843 (Miss. 2005). "Instead, the relevant question is whether, after

14

viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

¶36.  After the close of the State's case, Culp moved for a directed verdict on all remaining counts of the indictment.  The motion was denied by the trial court, and Culp

now challenges Counts I, II, VIII, IX and X of the indictment.

*Count I (conspiracy to commit robbery)*

¶37.  Culp asserts that the State failed to prove a common plan and the necessary "union of minds" between Culp and Lowe to form a conspiracy.  However, testimony from other witnesses, including Culp's co-conspirator, indicate that not only did Culp agree to the conspiracy,  but also he was involved in its planning.

¶38.  In order to convict for conspiracy pursuant to Miss. Code Ann. § 97-1-1, the State must prove that the conspirators intended to enter into a common plan to further the conspiracy's common purpose.  *Franklin v. State*, 676 So. 2d 287, 288 (Miss. 1986).  "The conspiracy agreement need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts and conduct of the alleged conspirators."  *Id*.  A conspiracy requires proof of a "union of the minds" of the conspirators.  *Id.*

¶39.  Applying the facts in the light most favorable to the State, it is clear that Culp and Lowe formed the requisite "union of the minds" required to conspire to commit robbery.  Culp proposed the idea to rob the victims to Lowe and a group of men.  Culp asked and received Lowe's assistance in preparation of the crime.  There was a discussion between the two as to the best way to perform the robbery.  Lowe and Culp both went together to Lowe's sister's house to

15

retrieve the pistol that was used in the robbery. On the way back to the Amigo Mart, Culp again solicited the involvement of others in the commission of the crime. These facts display a "union of the minds" between Culp and Lowe.

*Count II (forcible rape)*

¶40. Culp argues that the State did not present sufficient evidence to prove that he forcibly raped Doe, and that although the indictment charged Culp under Miss. Code Ann. § 97-3-65(3)(a), the statutory rape sentencing provision, the State did not prove that Doe was sixteen years or younger. The State acknowledges that a typographical error was made in Count II of the indictment, which was properly entitled Forcible Rape, but should have cited subsection (4)(a), which addresses forcible rape instead of subsection 3(a), which addresses statutory rape. The purpose of the indictment is to serve notice of the charges against the defendant and the facts underlying such charges. *Westmoreland v. State,* 246 So. 2d 487, 490 (Miss. 1971). This does not require a citation to the specific statute, but merely enough facts so that the defendant is put on notice as to the statute that is alleged to have been violated. *Id.* at 492. We have held that where the objection to the citation of the statute is first made on appeal such incorrect citation will be treated as surplusage unless it is found prejudicial to the defendant. *Id.*

¶41. Culp's conviction should not be reversed due to the incorrect citation of the statute in the indictment, especially since the language of Count II spoke in terms of forcible rape.[6] Culp was adequately apprised of the charges levied against him by the State. As a result there was no

---

[6]"Elliot Culp and Travis Lowe, did on or about the 28th day of February, 2000, in Holmes County, Mississippi, willfully, unlawfully and feloniously have forcible sexual intercourse with [Jane Doe]."

16

prejudice to Culp because he sought to confront the charges of forcible rape and not those of statutory rape. The motion for a directed verdict by defense counsel even spoke in terms of forcible rape and not in terms of statutory rape.

¶42. Any error was one of form and not substance, and thus the argument regarding Count II fails on its merits. In addition, the motion at trial was substantively different than the issue as raised on appeal. At trial, Culp asked for a directed verdict due to a lack of sufficient evidence to prove Culp's participation in the forcible rape of Doe. He now asks this Court to reverse his conviction because the indictment contained the terms of forcible rape although the statute cited to was Miss. Code Ann. § 97-3-65(3)(a), statutory rape. Since Culp did not raise the issue at trial, it is procedurally barred, as well.

*Counts VIII, IX and X (aggravated assault)*

¶43. Culp asserts that he was entitled to a directed verdict regarding the aggravated assaults of Scott and Doe because neither the physical nor testimonial evidence present is reliable and sufficient to prove that he committed the assaults charged. Our review of the record reveals otherwise.

¶44. According to Lowe's testimony, the events that transpired that night began when Culp learned from a third party that Scott had bragged about robbing someone in Texas of $5,000. On direct examination Hudie Weatherby, a friend of Culp and Lowe, testified that Culp suggested to a group of men, five in total, that they rob Scott and Doe. To aid in this, Culp asked Lowe if he had a pistol that they could use. They also discussed using a bat on the victims. According to Lowe's testimony, he and Culp then drove to Lowe's sister's house where he kept a pistol. On

17

the way back to the Amigo Mart, they stopped the other three men who were originally present and asked them again if they would like to join. It was at that time, according to Weatherby, that Culp informed the group that he intended on killing the victims. ¶45. On direct examination Lowe testified that he and Culp encouraged Doe and Scott to

drive with them to sell their bus tickets back to the owner of the bus stop so that they would have money to buy a car from Culp. Culp then drove the victims to an isolated stretch of road and produced the pistol, ordered them out of the car, and threatened them with the pistol. It was at that time that Culp and Lowe both raped Doe. After the rape Culp became nervous that Scott and Doe would report them to the police, so Culp stabbed Scott in the neck twice and stabbed Doe in the torso with knives that they had taken from the victims. Culp then beat Scott with a bat. After he had beaten Scott, he handed the bat to Lowe and according to testimony from Lowe, instructed him to beat Doe with the bat, which he did.

¶46. There was ample evidence for a reasonable jury to convict. The testimony of Culp's co-conspirator, Lowe, and Doe is sufficient to support a finding that Culp participated in the aggravated assault of Scott by stabbing him with a knife, and, that he cut Doe with the same knife. While there is no evidence to support the allegation that he personally beat Doe with a bat, there is evidence to support the finding that as an accomplice he aided and incited Lowe to beat her. We find no merit to Culp's assignments of error regarding Issue III.

## IV. INCONSISTENT JURY VERDICTS.

18

¶47.    The jury found Culp guilty of aggravated assault[7] but not guilty of capital murder.[8]

Culp argues that these verdicts are inconsistent, and thus his conviction and subsequent sentence

for the aggravated assault of Scott must be vacated.   Culp further asserts that whoever assaulted

Scott also killed him, and therefore it is logically inconsistent to hold him guilty of aggravated

assault, but not capital murder.   Culp contends that because he was acquitted of capital murder,

his conviction for aggravated assault must also be vacated. In   *Holloman v. State,* 656 So. 2d

1134, 1141 (Miss. 1995), this Court addressed the issue of inconsistent jury verdicts, as follows:

> Regarding inconsistent verdicts, the United States Supreme Court has said this:

>> [I]nconsistent verdicts--even verdicts that acquit on a predicate offense
>> while convicting on the compound offense--should not be interpreted as a
>> windfall to the Government at the defendant's expense. It is equally possible
>> that the jury, convinced of guilt, properly reached its conclusion on the
>> compound offense, and then through mistake, compromise, or lenity,
>> arrived at an inconsistent conclusion on the lesser offense. But in such
>> situations the Government has no recourse if it wishes to correct the jury's
>> error; the Government is precluded from appealing or otherwise upsetting
>> such an acquittal . . .

>> Inconsistent verdicts therefore present a situation where "error," in the
>> sense that the jury has not followed the court's instructions, most certainly
>> has occurred, but it is unclear whose ox has been gored. Given this
>> uncertainty, it is hardly satisfactory to allow the defendant to receive a new
>> trial on the conviction as a matter of course.

>> . . . there is no reason to vacate the respondent's conviction merely because
>> the verdicts cannot rationally be reconciled. Respondent is given the benefit
>> of her acquittal on the counts on which she was acquitted, and it is neither
>> irrational nor illogical to require her to accept the burden of her conviction

---

[7] Aggravated assault is "knowingly caus[ing] bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm." Miss. Code Ann. § 97-3-7(2)(b).

[8] Capital murder is "[the killing of a human being][w]hen done with or without any design to effect death, by any person engaged in the commission of the crime of felonious abuse and/or battery of a child." Miss. Code Ann.§ 97-3-19(2)(f). Scott was only fifteen years of age.

on the counts on which the jury convicted. *United States v. Powell*, 469 U.S. 57, 65, 69, 105 S. Ct. 471, 476-77, 479, 83 L. Ed. 2d 461 (1984) (citations omitted).

¶48.    As noted in *Holloman,* the Court's review of the sufficiency of the evidence is adequate protection from jury error or irrationality. *Id.*    Culp states that Scott was beaten with a baseball bat and stabbed, which caused his death, that the jury determined that he committed these acts pursuant to an aggravated assault.   Culp then interprets the jury's determination to mean that the jury found that Scott's death was somehow not the result of the beating, and thus Culp "beat Scott to death, but did not cause his death."

¶49.    A person is guilty of aggravated assault if he:

> (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or
>
> (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm.

Miss. Code Ann. § 97-3-7(2).

¶50.    Clearly the essential elements of aggravated assault are present here beyond a reasonable doubt.   First, there was the testimony of co-defendant Lowe, implicating Culp as¬the person who obtained a pistol, drove  Doe and Scott out into the country, raped her, set their clothes on fire, stabbed and cut both of them with a knife and then repeatedly beat Scott with a bat.  Even though the State offered leniency to Lowe, the jurors still found his testimony credible.   Second,   Doe testified similarly to the events of the day in question.    Third, there was strong evidence linking

Culp to the crime. This includes Doe's blood found on Culp's shirt, Culp's DNA found in Doe's vagina and eyewitness testimony of a police officer who saw Culp and Lowe together with the victims earlier that day.

¶51. Inconsistent verdicts are permissible under the rationale of *Powell*. Culp's argument is without merit.

### V. WHETHER CULP WAS CONVICTED OF MULTIPLICITOUS COUNTS, THEREBY VIOLATING HIS RIGHT TO DUE PROCESS OF LAW.

¶52. Culp argues that his rights under the Mississippi and United States Constitutions were violated when he was charged with both aggravated assault and capital murder by felonious abuse of a child. As this issue involves constitutional rights the standard of review is de novo. *Palm v. State,* 748 So. 2d 135, 142 (Miss. 1999).

¶53. Culp recasts his argument from Issue IV, asserting that because the aggravated assault merged with capital murder by felonious abuse of a child his conviction for aggravated assault should be vacated. Culp additionally asserts that the charges of aggravated assault and capital murder merged into a single count of capital murder, because neither requires proof of an additional element.

¶54. Mississippi follows the test set out by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), when interpreting Miss. Code Ann. § 99-7-2 (1).[9] *White v. State,* 702 So. 2d 107, 109 (Miss. 1997). In applying this

_____

[9] "Two or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or

21

statute, we note that the principles of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution apply, and we use the ***Blockburger*** test to determine if a set of facts violates the Double Jeopardy Clause. ***White,*** 702 So. 2d at 109.

¶55. The ***Blockburger*** Court said that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact that the other does not." ***Blockburger,*** 284 U.S. at 304.

¶56. The crime of capital murder by felonious abuse of a child requires proof that a child is involved. This is an additional element that must be proven for capital murder that is not required for aggravated assault. Aggravated assault requires proof of an intent to kill, while capital murder by felonious abuse of a child can be committed with or without intent to kill. Intent to kill is an additional element not required for capital murder by felonious abuse of a child. Therefore, under the ***Blockburger*** test, there is no violation of Culp's constitutional rights. When each separate crime charged requires proof of a fact that the other does not, the ***Blockburger*** test is satisfied, *notwithstanding a substantial overlap in the proof offered to establish the crimes.* This well-stated logic was correctly applied by the Mississippi Court of Appeals in ***Towner v. State,*** 812 So. 2d 1109, 1114 (Miss. Ct. App. 2002)(citing ***Iannelli v. United States,*** 420 U.S. 770, 785 n. 17 (1975)), and today we adopt and apply it in the present case.

---

transactions connected together or constituting parts of a common scheme or plan." Miss. Code Ann. § 99-7-2 (1).

¶57.   In ***Powell v. State,*** 806 So. 2d 1069, 1074 (Miss. 2001)*,* this Court applied the "same elements" test articulated in ***Blockburger***, clearly indicating that the proper inquiry   concerns the elements of the crime, rather than the underlying facts.   In the present case, the fact that one crime was committed with a baseball bat and the other with a knife is irrelevant*.*   The United States Supreme Court used similar language in ***United States v. Dixon,*** 509 U.S. 688, 689, 113 S. Ct. 2849, 2851,  125 L. Ed. 2d 556 (1984), stating that the ***Blockburger*** test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution."

¶58.   The ***Blockburger*** test does not look to the facts adduced at trial but rather focuses on the elements of the offense charged.   ***Brock v. State,*** 530 So. 2d 146, 150 (Miss. 1988) (citing ***Brown v. Ohio,*** 432 U.S. 161, 166, 97 S. Ct. 2221, 2225-26, 53 L. Ed. 2d 187 (1977)).   Differences in underlying facts are not relevant for determining whether Culp's constitutional rights have been violated by double jeopardy.   Culp's multiplicitous counts argument is without merit.

### VI. GRAND JURY COMPOSITION.

¶59.   Once a grand jury has been sworn and empaneled, no objection can be raised except as to fraud, according to Miss. Code Ann. § 13-5-43.[10]   *See **Polk v. State,*** 288 So. 2d 452 (Miss.

---

[10] " Before swearing any grand juror as such, he shall be examined by the court, on oath, touching his qualification. After the grand jurors shall have been sworn and impaneled, no objection shall be raised, by plea or otherwise, to the grand jury, but the impaneling of the grand jury shall be conclusive evidence of its competency and qualifications. However, any party interested may challenge or except to the array for fraud." Miss. Code Ann. § 13-5-43.

1974). In a more recent case, this Court held that grand jury proceedings are sacred, and courts cannot go behind an indictment and inquire into evidence considered by a grand jury. *Hood v. State,* 523 So. 2d 302, 306 (Miss. 1988) (citing *State v. Matthews,* 218 So. 2d 743 (Miss. 1969); *Case v. State,* 220 So. 2d 289 (1969)). The sole inquiry for an appellate court is whether the grand jury was subjected to improper influences. *Id.* at 307. Absent evidence that a member of the grand jury acted with malice, hatred, or ill will, or fraud, or otherwise violated the oath taken by grand jurors, it is presumed that the grand jurors did not improperly or illegally act in returning the indictment against the accused. *Southward v. State,* 293 So. 2d 343, 344 (Miss. 1974). The circuit court's factual determinations related to this issue are reviewed by this Court only for clear error. *Morris v. State,* 777 So. 2d 16, 24 (Miss. 2000). However, the trial court's conclusions of law are reviewed de novo. *Palm v. State,* 748 So. 2d 135 (Miss. 1999); *Entergy Miss., Inc. v. Burdette Gin Co.,* 726 So. 2d 1202, 1204 (Miss. 1998).

¶60. Culp argues that his constitutional rights were violated because of the *appearance* of improper influence and fraud in the grand jury that indicted him, stating that one of the jurors was the wife of the county attorney,[11] she did most of the writing for the grand jury, and "was pretty much doing the talking." She also had worked as a part-time bookkeeper in her husband's office at the time of the indictment. Like the other grand jurors, she was instructed that if any time she had an interest or bias in a particular case that she should make that known and ask to be excused. She testified that she felt that she had no reason to excuse herself for bias or interest.

¶61. Culp also points out that the foreman of the grand jury was an employee of the Durant

---

[11]The office of the county attorney assisted in the prosecution of this case.

Police Department, the same department that assisted in the arrest of Culp's co-defendant, Travis Lowe. Culp argues that these two improprieties violate his right to an unbiased grand jury, a right which is deeply embedded in the law of this country and, therefore, special care should be taken to ensure that it is not infringed upon. He asserts the trial court should have concerned itself with whether the appearance of impropriety existed.

¶62. This Court requires there to be actual influence, not just the appearance of impropriety. *Southward,* 293 So. 2d at 344. Culp relies on *Hood*, 523 So.2d at 302, for the proposition that the appearance of impropriety alone is enough to quash the indictment. However, *Hood* is factually distinguishable, because there were two attorneys present during Hood's grand jury proceedings who were actually interested in the outcome. *Southward* involved two grand jurors who were allegedly interested because of a family relationship because the husband of the prosecuting witness and his first cousin were members of the grand jury. This Court found that in *Southward* the accused failed to meet his burden for quashing an indictment because he failed to show that a grand juror acted with malice, hatred, ill will, or fraud. *Southward,* 293 So. 2d at 344.

¶63. There is no evidence in the record that there was improper influence on the grand jury. The trial court held an extensive hearing on this issue, over the course of two days. Following argument by both counsel, Culp called eight witnesses. They included county attorney Marc Boutwell; his wife Dawn, who was the bookkeeper for his law office; Barry Mitchell, the dispatcher for the Durant Police Department; Patrick James, a patrolman for the Durant Police Department; and grand jurors David Creamer, Beverly Langston, Darrell Anderson, and Coletta

Brown. Culp asked members of the grand jury whether anything influenced them in their decision and they said only the evidence presented influenced their votes. The county attorney testified that he never entered the grand jury room during proceedings regarding Culp, and his wife testified that she did not have any special knowledge about the case, and did not make comments or discuss the case during the grand jury proceeding.

¶64. There is contradictory evidence that juror Dawn Boutwell was vocal, and in addition, she served as the secretary of the grand jury. Further, her relationship to the county attorney is arguably stronger than the relationship in *Southward.* However, these factual differences alone are not enough to require quashing Culp's indictment.

¶65. We noted in *Hood* that "[w]e do not think it right and now condemn any practice whereby the accuser may also be the trier of fact." *Hood*, 523 So. 2d at 311. Culp has not shown that the accuser is also the trier of fact in this case. The fact that the county attorney's wife was on the grand jury does not mean the county attorney exerted improper influence. The trial court specifically found that there was no evidence that the police department employee did anything improper to influence the grand jury. The presumption that the grand jury acted properly, together with the sacredness of grand jury proceedings, prevents this Court from quashing the indictment based on the appearance of impropriety alone.

¶66. Culp makes one additional argument that we address summarily. He argues that the prosecution engaged in fraud by presenting the case so quickly to the grand jury. The prosecutor did testify that he had never presented a case to the grand jury as quickly as this one, and Culp contends that this is tantamount to fraud, and would therefore be one of the grounds for quashing

26

the indictment. However, he cites no authority in support of this contention. Culp's defense is based on the idea that the appearance of impropriety is enough to quash an indictment. This is not the law, and the fact that the prosecutor moved quickly clearly does not constitute fraud.

¶67. We affirm the circuit court's finding that there was no exertion of improper influence. Such decision is not clearly erroneous. Culp has not met his burden of overcoming the presumption that the grand jury acted properly and without improper influence. Issue six is without merit.

## VII. FAILURE TO DISCLOSE THE IDENTITY OF THE TWO GRAND JURORS.

¶68. This issue involves a constitutional right and thus the standard of review is de novo. *Palm v. State,* 748 So. 2d at 135 (Miss. 1999); *Entergy Miss., Inc. v. Burdette Gin Co.,* 726 So. 2d at 1204 (Miss. 1998).

¶69. Culp argues that his constitutional rights were violated because the State did not disclose the identity of the two allegedly interested grand jurors and that their identity would be evidence favorable to the defense and material under *Brady v. Maryland*, 373 U.S. 83, 87 , 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963). He further asserts that without the tainted indictment, there would not have been a conviction, thus producing a different outcome and satisfying the *Giglio* test. *See Giglio v. United States*, 405 U.S. 150, 153-54, 92 S. Ct. 763, 766, 31 L. Ed. 2d 104 (1972).

¶70. In *Brady,* the United States Supreme Court said the suppression of material evidence justifies a new trial irrespective of good faith on the part of the prosecutor. *Brady*, 373 U.S. at 87. The requirement of materiality is of utmost importance. Materiality has been defined by the United

States Supreme Court as evidence that could have a reasonable likelihood of affecting the outcome of the case. More specifically, the Court said that "when the 'reliability of a given witness may well be *determinative* of guilt or innocence,' non-disclosure of evidence affecting credibility falls within this general rule. *Giglio,* 405 U.S. at 153-54, (quoting *Napue v. Illinois*, 360 U. S. 264, 269, 79 S.Ct. 1173, 3L. Ed.2d. 1217 (1959)) (emphasis added).

¶71. Much of Culp's argument centers around his incorrect presumption that the appearance of impropriety is enough to quash a grand jury indictment. Based on his misstatement of the law, he incorrectly argues that this evidence is material. However, because the record does not show actual improper influence, the identity of the two grand jurors alleged to be interested is immaterial.

¶72. In a recent case, the Mississippi Court of Appeals addressed the issue of grand jurors, albeit in a different context, and came to the same conclusion we reach today. In *Busick v. State,* 906 So. 2d 846, 860 (Miss. Ct. App. 2005), the defendant sought to obtain several items of exculpatory evidence, including the identity of the temporary grand jury foreman. Busick argued that the name should have been disclosed because he believed that the foreman worked for the FBI, which was involved in the case, and thus his grand jury service was improper. The Mississippi Court of Appeals agreed with the trial court's holding that, based on *Southward*, even if the foreman did work for the FBI, his grand jury service would not constitute grounds for quashing Busick's indictment. We agree with the Court of Appeals' rationale, and adopt its holding today. The mere fact that the foreman of the grand jury which indicted Culp was employed part time by one of the same law enforcement agencies which worked on the case, without more, was not evidence that there was an improper effect on the indictment or that any member of the grand jury acted with fraud, ill will, hatred, or malice. There was no requirement that the information about the two

"interested" grand jurors must be given to Culp, because it was not material. Because it was not material and there was no showing of an improper effect on the indictment or grand jurors, the trial court was correct in denying Culp's motion to quash the indictment.

### VIII. CUMULATIVE ERROR.

¶73. Culp argues that his constitutional rights were violated because of cumulative error, in that the six errors set forth above combine to create an unfair trial, even if not individually reversible. Although Culp correctly states the law, he fails to show any errors which cumulatively require reversal.

¶74. In *Byrom v. State,* 863 So. 2d 836, 847 (Miss. 2003) we made it clear that each error, whether or not it reaches a level to require reversal, may be considered cumulatively. *Byrom* is the clearest expression from this Court as to how cumulative error should be analyzed, as follows:

> What we wish to clarify here today is that upon appellate review of cases in which we find harmless error or any error which is not specifically found to be reversible in and of itself, we still have the discretion to determine, on a case-by-case basis, as to whether such error or errors, *although not reversible when standing alone*, may when considered cumulatively require reversal because of the resulting cumulative prejudicial effect.

*Byrom*, 863 So. 2d at 847 (emphasis added).

¶75. There is nothing in the record before us that amounts to a violation of Culp's right to a fair trial. There are no errors that accumulate to result in a fundamentally unfair trial. A criminal defendant is not entitled to a perfect trial, only a fair one. *Sand v. State,* 467 So. 2d 907, 911 (Miss. 1985). In a complex case like this one, there will inevitably be minor mistakes. These are a part of

the process, and in the interests of judicial efficiency should not result in a reversal. Culp has not shown any errors, which when accumulated, have prejudiced his rights.

## CONCLUSION

¶76. We conclude that Culp's claims on appeal are without merit, and affirm his conviction and sentence by the Holmes County Circuit Court.

¶77. **COUNT I: CONVICTION OF CONSPIRACY TO COMMIT ROBBERY AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF RAPE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF ARMED ROBBERY AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT III SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT II. COUNT IV: CONVICTION OF KIDNAPING AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT V: CONVICTION OF KIDNAPING AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES IN COUNTS IV AND V SHALL RUN CONCURRENTLY WITH EACH OTHER, BUT CONSECUTIVELY TO THE SENTENCES IMPOSED IN COUNTS II AND III. COUNT VI: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT VII: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES IN COUNTS VI AND VII SHALL RUN CONCURRENTLY WITH EACH OTHER BUT CONSECUTIVELY WITH THE SENTENCES IMPOSED IN COUNTS II, III, IV AND V. COUNT VIII: CONVICTION OF ARSON THIRD DEGREE AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT IX: CONVICTION OF ARSON THIRD DEGREE AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES IN COUNTS I AND VIII AND IX SHALL RUN CONCURRENTLY WITH EACH OTHER AND CONCURRENTLY WITH THE REMAINING COUNTS. APPELLANT SHALL SERVE A TOTAL TERM OF INCARCERATION IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR SIXTY (60) YEARS.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ AND DICKINSON, JJ., NOT PARTICIPATING.**