IRVING, J.,
 

 for the Court.
 

 ¶ 1. Robert Ellis Jr. was convicted by the Lowndes County Circuit Court of possession of less than 0.1 gram of cocaine and sentenced as a habitual offender to eight years in the custody of the Mississippi Department of Corrections without the possibility of probation or parole. Aggrieved, Ellis appeals and asserts: (1) that the trial court erred in failing to suppress evidence in violation of his due process rights and Fourth Amendment rights, (2) that the trial court erred in allowing hearsay testimony of several witnesses, and (3) that evidence was admitted without the establishment of a proper foundation.
 

 
 *671
 
 ¶ 2. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 3. On May 4, 2006, Officer Ryan Woods, a Columbus, Mississippi police officer, called over the radio for assistance in apprehending a fleeing suspect. Officers Kelvin Lee, Wade Beard, and Oscar Lewis responded to the call. By the time the officers made it to the scene, Officer Woods had already detained the suspect, Ellis.
 

 ¶ 4. One of the officers noticed that Ellis had a plastic bag containing a white substance in his mouth and that Ellis began chewing it. Having worked in narcotics, the officers determined that it was highly probable that the bag in Ellis’s mouth contained some type of narcotic that he was trying to dispose of. As Ellis continued to chew on the bag, the officers noticed that a white substance appeared on the outer corner of his mouth, indicating to the officers that the bag was open and that the white substance, suspected of being cocaine, was getting into Ellis’s mouth. The officers’ suspicion was later confirmed by the crime lab, which determined that the white substance was cocaine.
 

 ¶ 5. In the attempt to prevent Ellis from ingesting “too much” of the cocaine, the officers used several methods to get him to spit the bag out. First, the officers tried pinching Ellis’s nose to prevent him from breathing. Second, the officers tried pressing Ellis’s cheeks and jaws. Third, the officers informed Ellis that he was in imminent danger, hoping that Ellis would be concerned for his health and would spit the bag out. When none of these methods worked, the officers used a Taser on Ellis.
 
 [1]
 
 After the first use of the Taser, Ellis partially released the bag; however, when the officers released the Taser’s trigger, Ellis retracted the bag. At that point, the officers called for medical assistance. While they were waiting, they used the Taser on Ellis four additional times in one last attempt to get him to disgorge the bag of cocaine.
 

 ¶ 6. At trial, all of the officers testified that they were attempting to save Ellis’s life, as they were all aware that the ingestion of too much cocaine can be fatal. Also, at trial, the State offered a video recording of the incident. The video showed the officers constantly telling Ellis to spit the bag out and explaining that if he did not, he would die. The video also revealed that, as time passed, Ellis’s condition worsened until, by the end of the recording, he could barely stand on his own.
 

 ¶ 7. The ambulance driver testified that when she and her partner arrived at the scene, Ellis was having difficulty breathing, “as if he was choking on something.” The driver also testified that Ellis’s skin was clammy, his color was abnormal, he was sweating, and he had a rapid heartbeat. The driver further testified that Ellis’s symptoms were consistent with the first stages of a drug overdose. According to the driver, they placed Ellis on a stretcher and put him in the back of the ambulance. Officer Woods and the driv
 
 *672
 
 er’s partner
 
 [2]
 
 rode in the back of the ambulance with Ellis.
 

 ¶ 8. Shortly after the ambulance left for the hospital, the driver was asked by her partner to pull over. She did so and went to the back of the ambulance. When she opened the back door, she saw her partner using forceps to remove the bag from Ellis’s mouth. The driver testified that her partner had determined that the bag was blocking Ellis’s airway. The driver gave Officer Woods a biohazard bag to be utilized in preserving the bag that was removed from Ellis’s mouth. However, she testified that she did not see Officer Woods place the bag of cocaine in the biohazard bag, because she immediately returned to the driver’s seat and continued the drive to the hospital.
 

 ¶ 9. Officer Woods was unable to testify at trial because he had been called to active duty in Iraq. Therefore, there was no testimony as to what he did with the bag after it was given to him by the ambulance driver. However, Officer Brad Ray, a former narcotics officer with the Columbus Police Department, testified that he removed a bag bearing Officer Woods’s badge number, initials, and Ellis’s case number from the evidence vault and sent it to the crime lab for testing.
 
 [3]
 
 Officer Ray further testified that it was departmental procedure to have the case number, complaint number, and the date of the incident on items that were placed in the evidence vault. Upon being shown the bag that was removed from the evidence vault by Officer Ray, all of the officers testified that it was, in fact, the bag that Ellis had in his mouth on the day of the incident. Also, the ambulance driver testified that the bag that was shown to her at trial appeared to have been the bag that her partner pulled from Ellis’s mouth while they were transporting him to the hospital.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 10. First, Ellis contends that the bag of cocaine that was removed from his mouth was removed in violation of his Fourth Amendment and due process rights and that the trial court erred in failing to suppress it. Ellis relies here, as he did in the trial court, on the “shocks the conscience” standard established in
 
 Rochin v. California,
 
 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952) and argues that it should have been the standard used by the trial court. In
 
 Rochin,
 
 officers illegally broke into a defendant’s room and attempted to retrieve pills from the defendant’s mouth.
 
 Id.
 
 at 166, 72 S.Ct. 205. After they failed in their attempt, they handcuffed him and transported him to a hospital where the pills, containing morphine, were removed by a doctor who pumped his stomach without his consent.
 
 Id.
 
 The defendant was convicted by a California superior court of illegally possessing morphine.
 
 Id.
 
 The pills that were removed from his stomach were the primary evidence offered against him.
 
 Id.
 
 The defendant appealed, and the District Court of Appeal affirmed.
 
 Id.
 
 The Supreme Court of California denied certiorari.
 
 Id.
 
 at 167, 72 S.Ct. 205. Following a denial of review by the California Supreme Court, the United States Supreme Court granted cer-tiorari and suppressed the evidence, holding that the method utilized by law enforcement to obtain the evidence “shocks the conscience.”
 
 Id.
 
 at 172, 72 S.Ct. 205. However, the Supreme Court clarified that it was all of the actions taken by the police to obtain the evidence that “shocked the conscience.”
 
 Id.
 
 Specifically, the Court
 
 *673
 
 held that taken together, the “illegally breaking into the privacy of the [defendant], the struggle to open his mouth and remove what was there, and the forcible extraction of his stomach’s contents” amounted to a shocking of the conscience.
 
 Id.
 

 ¶ 11. As we explain below, Ellis’s reliance on
 
 Rochin
 
 is misplaced. He does not consider the totality of the circumstances surrounding the incident. Rather, he bases his argument solely on the method used to obtain the evidence.
 

 ¶ 12. The standard of review concerning a trial judge’s ruling on a motion to suppress evidence is well established:
 

 When reviewing a trial court’s ruling on the admission of evidence, [an appellate court] must assess whether there was substantial credible evidence to support the trial court’s findings. The admission of the evidence lies within the discretion of the trial court and will be reversed only if that discretion is abused.
 

 McLendon v. State,
 
 945 So.2d 372, 879(¶ 14) (Miss.2006) (quoting
 
 Culp v. State,
 
 933 So.2d 264, 274(¶26) (Miss.2005)).
 

 ¶ 13. Here, the trial court, in determining whether to grant or deny Ellis’s motion to suppress, reviewed the video recording. The trial judge found that the recording proved that the officers’ primary objective was to save Ellis’s life. Accordingly, the trial judge held that the facts in this case are distinguishable from those in
 
 Rochin.
 
 He noted that in
 
 Rochin,
 
 the police officers’ sole purpose for having Ro-chin’s stomach pumped was to preserve evidence. The trial judge further pointed out that in this case, Officer Woods did not retrieve the evidence bag from Ellis’s mouth, nor did he request the EMT to retrieve it; rather, the EMT retrieved it on his own volition.
 

 ¶ 14. We agree with the trial judge’s analysis of
 
 Rochin
 
 and find, as did the trial judge, that nothing about the officer’s action in this case “shocks the conscience.” Indeed, the action of the officers can only be described as admirable. Their quick decision to call for medical assistance may very well be the reason that Ellis is able to prosecute this appeal. This contention of error is without merit.
 

 ¶ 15. Next, Ellis contends that the trial court erred in allowing the officers to testify that Officer Woods informed them that he needed their assistance because Ellis was fleeing and would not stop for him. Ellis contends that this testimony was hearsay and was highly prejudicial.
 

 ¶ 16. While Ellis argues that the officers’ testimonies about his fleeing the scene left a bad impression on the jurors, we find that this specific testimony was simply offered to give the complete story of the incident and was not hearsay, as it was not offered to prove the truthfulness of the assertions. The testimonies arose as a result of the officers being questioned regarding the basis for their involvement in the ease. More importantly though, the reason behind the initial stop has no bearing on the elements of the crime. Therefore, this contention of error is also without merit.
 

 ¶ 17. Lastly, Ellis contends that the bag of cocaine was improperly admitted because the necessary chain of custody was not established. He argues that a break in the chain of custody occurred in the handling of the bag of cocaine after it was removed from his mouth. This argument is based on two facts: neither Officer Woods nor the EMT that was attending to Ellis in the back of the ambulance testified at trial, and the driver of the ambulance, who was the only other person that saw the bag of cocaine after it was removed, testified that she did not see what Officer Woods did with it.
 

 
 *674
 
 ¶ 18. With respect to the burden of proof that must be shouldered by the proponent of the admissibility of evidence subject to a chain-of-custody challenge, the Mississippi Supreme Court has stated:
 

 [T]he proponent must satisfy the trial court that there is no reasonable inference of material tampering with or (deliberate or accidental) substitution of evidence. If there is a reasonable inference of tampering or substitution, the proponent’s proof is insufficient “to support a finding that the matter in question is what its proponent claims.” This is so because, in such a case, a fair-minded jury may not reasonably have found the fact beyond a reasonable doubt.
 

 Butler v. State,
 
 592 So.2d 983, 985 (Miss.1991) (internal citations omitted). An appellate court disregards chain-of-custody objections when there has been “properly predicated, direct identification testimony.”
 
 Id.
 
 at 985-86. In other words, a chain-of-custody issue exists only when “no witness makes a positive permissible identification of the object that it is what its proponent claims.”
 
 Id.
 
 at 985.
 

 ¶ 19. In our case there was no direct testimony establishing the transfer of the bag of cocaine from Officer Woods to the evidence vault of the police department. However, all of the officers and the ambulance driver identified the bag shown to them at trial as the bag that was removed from Ellis’s mouth. Officer Ray testified that he retrieved a bag from the evidence vault that bore Officer Woods’s initials, badge number, and Ellis’s case number and that this form of labeling was normal department procedure. Officer Ray took the bag to the crime lab for testing, and the crime lab identified the substance in the bag as cocaine.
 

 ¶ 20. Even though Officer Woods was not available to testify, there is little doubt that the State proved that the bag of cocaine which was removed from Ellis’s mouth was in fact the same bag of cocaine that was removed from the evidence vault by Officer Ray and tested by the crime lab. Therefore, the State’s proof was sufficient for the trial judge to find that there was no reasonable inference of tampering or substitution. Any break in the chain of custody goes to the weight of the evidence, not its admissibility.
 
 Fisher v. State,
 
 481 So.2d 203, 225 (Miss.1985). This contention of error is also without merit.
 

 ¶ 21. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF LESS THAN 0.1 GRAM OF COCAINE AND SENTENCE AS A HABITUAL OFFENDER OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PROBATION OR PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.
 

 [1]
 

 . According to the officers, they used the Ta-ser without the cartridge which contains probes that break the skin. The officers explained that the probes override all muscle control and incapacitate the suspect. When the Taser is used without the probes, the pain level is reduced to that of an electric shock, similar to the shock that emits from a cattle prod. The officers further explained that this type of use is less painful than using the Taser with the probes attached, as the pain lasts only as long as the Taser is firing and is in contact with the suspect.
 

 [2]
 

 . The driver's partner did not testify at trial.
 

 [3]
 

 . A forensic scientist at the crime lab confirmed that the bag contained cocaine.