# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KM-01480-SCT

*MILTON L. McLENDON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/18/2005 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | WAYNE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | V. W. CARMODY, JR. |
| | DANIEL P. SELF, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | E. J. (BILBO) MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 10/12/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND CARLSON, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     The defendant in today's case appeals from a judgment of conviction entered by the Wayne County Circuit Court after a trial de novo conducted pursuant to the defendant's appeal to circuit court from the justice court DUI conviction. Finding no error, we affirm.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     On the night of January 15, 2005, the Waynesboro Police Department (WPD) conducted a routine roadblock during which Milton L. McLendon was stopped and ultimately charged with driving under the influence, first offense (DUI). McLendon was tried before the

Justice Court of Wayne County and convicted of DUI on February 24, 2005. McLendon appealed to the Circuit Court of Wayne County and received a trial de novo beginning on May 12, 2005, Judge Robert W. Bailey, presiding. McLendon had filed a Motion to Suppress Evidence or in the Alternative to Dismiss the Charge. Within this motion, McLendon contested the constitutionality of the roadblock, as well as lack of probable cause for his arrest. Inasmuch as the circuit court was sitting without a jury to hear McLendon's case, counsel for both the prosecution and the defendant agreed that the hearing on the motion and on the merits of the case could be conducted simultaneously. Since McLendon's appeal is extremely fact-intensive, all relevant facts as developed at the circuit court trial will be discussed.

¶3. On January 15, 2005, the Assistant Chief of Police of the WPD, Leonard Frost, was the acting chief of police. As acting Chief of Police, Chief Frost issued verbal orders for roadblocks within the city limits of Waynesboro for the month of January. Since there were no written policies concerning roadblocks conducted by the WPD, Chief Frost put oral policies in place. The oral policies regarding roadblocks included:

1. The roadblock should be in a well lit area;
2. The location of the roadblock should be inside the city limits;
3. It should be where people can see law enforcement officers;
4. Law enforcement vehicles should have the blue lights on;
5. Law enforcement officials should wear vests;
6. There should be room for people to pull their vehicles off the road safely;
7. The time of the roadblock should be between 8:00 p.m. and 12:00 a.m.

¶4. The WPD often worked in conjunction with the Mississippi Highway Patrol (MHP) and the Wayne County Sheriff's Office (SO). All three law enforcement agencies were to work

in concert in conducting these roadblocks. There were several common areas in the City of Waynesboro in which the WPD conducted roadblocks. One common area was on Highway 184 in front of the Western Sizzlin restaurant.[1]

¶5.    According to the testimony of the various officers, on January 15, 2005, the WPD ordered a roadblock along one of the highways which traversed Waynesboro. The WPD officers, along with the MHP, decided to conduct the roadblock on Highway 184 in front of the Western Sizzlin. Chief Frost did not explicitly tell his officers at what point or what time to conduct this specific roadblock because such time and place was within the officers' discretion. There were no logbooks kept, but the officers were required to indiscriminately stop every vehicle coming through the roadblock and check both the driver's license and insurance card. Additionally, officers were instructed to pull over a vehicle if the smell of alcohol was detected or if the driver had an outstanding warrant. Generally, if everything checked out with a vehicle, and its driver, the stop was designed to take approximately one minute.

¶6.    During the particular roadblock at issue in today's case, several police vehicles[2] were on both sides of the highway. The police vehicles had their flashing blue lights on and some of the officers were wearing reflective vests which had "police" on it. Every single vehicle

---

[1]The record reveals that the Western Sizzlin was sometimes referred to as either the Western Inn, the Western Sizzler, or "the steak house." Likewise, the record reveals that Highway 184 was sometimes referred to as Highway 84.

[2]The term "police vehicle(s)" will be used for all law enforcement agency vehicles involved in the roadblock, regardless of whether the vehicle belonged to the Waynesboro Police Department or the Mississippi Highway Patrol.

which passed through the roadblock that night was stopped and if there were no violations, the drivers were sent on their way. On the other hand, if a violation were found or suspected, the driver was requested to pull his/her vehicle over into the Western Sizzlin parking lot. Since the Western Sizzlin restaurant was closed during the operation of the roadblock, there was more than adequate space for vehicles to be pulled over for further investigation.

¶7. On the night in question, McLendon pulled up to the roadblock, and during the check of McLendon's driver's license, officers smelled what they suspected to be an intoxicating beverage on his breath; therefore, McLendon was requested to pull his vehicle into the Western Sizzlin parking lot. Once his vehicle had been safely driven off the highway and into the parking lot, the officers asked McLendon if his vehicle could be searched, and McLendon consented. McLendon then exited his vehicle.

¶8. After McLendon stepped out of his vehicle, state trooper Holt Ross approached McLendon and asked him if he had been drinking. McLendon told trooper Ross that he had been at the club earlier, where he had "a couple [of] drinks." Thus, trooper Ross informed McLendon that he would like to perform a couple of field sobriety tests. Trooper Ross ran the HGN test[3] and the one-leg stand test.[4] Trooper Ross concluded that on the HGN test

---

[3]HGN is an acronym for Horizontal Gaze Nystagmus. HGN is an involuntary jerking of the eye that occurs naturally as the eyes gaze to the side. A test was developed by researchers as a means of evaluating measures of an autonomic reaction to central nervous system depressants (such as alcohol). *Horizontal Gaze Nystagmus: The Science and the Law*, A Resource Guide for Judges, Prosecutors and Law Enforcement (visited October 9, 2006), http://www.nhtsa.dot.gov/people/injury/enforce/nystagmus/hgntxt.html.

[4]The one-leg stand test, if successfully performed, will result in the person being tested to remain balanced on one leg, with arms down by his/her side, while counting to a certain

4

McLendon's eyes showed distinct nystagmus.[5] Additionally, trooper Ross observed that during the one-leg stand McLendon put his foot down twice while he was counting and instead of being able to keep his arms down by his side, McLendon kept them out from his side in order to keep his balance. Furthermore, trooper Ross gave McLendon a breathalyzer test to establish a breath-alcohol content. According to trooper Ross, the breathalyzer showed McLendon had a breath-alcohol content; therefore, trooper Ross took McLendon to the SO to run McLendon on the Intoxilyzer 5000 machine.

¶9. At the SO, trooper Ross informed McLendon that he had a right to refuse the intoxilyzer test. McLendon agreed to take the intoxilyzer test, but he failed to give a proper breath sample. Trooper Ross then informed McLendon that he had three minutes to satisfy the machine. If the machine was not satisfied within three minutes, McLendon's results would be logged as test refusal.[6]

¶10. Trooper Ross proceeded to show McLendon how easy it was to satisfy the machine, and McLendon stated he wanted to take the test again. Trooper Ross testified that McLendon provided a proper breath sample upon the second testing, and the results revealed a breath-

number.

[5]Nystagmus is defined as "an involuntary rapid movement of the eyeball, usually from side to side." Webster's New World Dictionary 933 (3rd College Ed. 1988).

[6]Miss. Code Ann. § 63-11-5(2) (Rev. 2004), provides for an automatic 90-day driver's license suspension upon a first offender's refusal to submit to the test.

5

alcohol content of 0.13%.[7]  Trooper Ross then arrested McLendon for DUI, first offense. However, having already noted in the logbook that McLendon had refused to take the test, trooper Ross never corrected the logbook to reflect the testing and test results. Therefore, it was never recorded in the logbook that McLendon actually had a breath-alcohol content of 0.13%.  The only notation of the 0.13% breath-alcohol content appeared on the uniform traffic ticket issued to McLendon.

¶11.    McLendon did not offer any evidence contrary to that offered by the prosecution, nor did McLendon otherwise attempt to rebut any of the officers' testimony.  At the conclusion of the trial on May 12, 2005, Judge Bailey took this case under advisement for a subsequent ruling, and on May 18, 2005, Judge Bailey entered a 13-page order, which included detailed findings of fact and conclusions of law.  In the end, Judge Bailey found that the law enforcement officials had conducted a constitutional roadblock and that the officers had probable cause to arrest McLendon.  Finally, Judge Bailey found McLendon guilty of DUI, First Offense and assessed a fine of $500 and court costs in the amount of $190.50.

¶12.    On May 25, 2005, McLendon filed a motion for a judgment notwithstanding the verdict, or in the alternative a motion for a new trial.  After a hearing on June 21, 2005, Judge Bailey denied these post-trial motions by an order entered on June 28, 2005.  McLendon thereafter timely perfected his appeal to this Court.

---

[7]Miss. Code Ann. § 63-11-30(1)(c) (Rev. 2004) provides that it is unlawful for a driver of a motor vehicle to operate such vehicle when the driver "has an alcohol concentration of eight-one hundredths percent (.08%) or more."  This portion of the statute applies to those persons who are above the legal age for the purchase of alcohol.

**DISCUSSION**

¶13. Although McLendon and the State present various issues to us for discussion, we will re-state the issues here for clarity in discussion.

I. **WHETHER THE ROADBLOCK WAS AN UNCONSTITUTIONAL SEIZURE OF McLENDON**

¶14. We first consider whether the trial court erred in denying McLendon's motion to suppress evidence, or in the alternative to dismiss the DUI charge against McLendon. Our standard of review concerning a trial judge's ruling on a motion to suppress evidence is clear. In *Culp v. State*, 933 So.2d 264 (Miss. 2005), we stated:

> When reviewing a trial court's ruling on the admission or suppression of evidence, this Court must assess whether there was substantial credible evidence to support the trial court's findings. The admission of evidence lies within the discretion of the trial court and will be reversed only if that discretion is abused.

*Id.* at 274 (citing *Crawford v. State,* 754 So.2d 1211, 1215 (Miss. 2000); *Magee v. State*, 542 So.2d 228, 231 (Miss. 1989)).

¶15. It is well-settled law that the Fourth Amendment of the United States Constitution "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *Brown v. Texas*, 443 U.S. 47, 50, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979) (quoting *Davis v. Mississippi*, 394 U.S. 721, 89 S. Ct. 1394, 22 L. Ed. 2d 676 (1969)); *Terry v. Ohio*, 392 U.S. 1, 16-19, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Additionally, the Fourth Amendment requires that such seizure be "reasonable." *Brown*, 443 U.S. at 50; *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975). Thus,

in deciding whether the subject roadblock in today's case was an unconstitutional seizure of McLendon in violation of the Fourth Amendment of the United States Constitution and Miss. Const. art. 3, § 23 1890, we must consider the required balancing test in determining the issue of reasonableness outlined in *Brown.* The balancing test outlined in *Brown* weighs "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown*, 443 U.S. at 50-51. *See also* *Dale v. State*, 785 So.2d 1102, 1104 (Miss. Ct. App. 2001). In other words, "[t]he reasonableness of seizures that are less intrusive than a traditional arrest . . . depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *Brown*, 443 U.S. at 50 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977); *United States v. Brignoni-Ponce*, 422 U.S. at 878.

¶16.    In applying the balancing test, we must first consider the "gravity of the public concerns served by the seizure." *Brown*, 443 U.S. at 50-51; *Dale*, 785 So.2d at 1104. McLendon asserts that the underlying purpose of the roadblock violated his Fourth Amendment rights. McLendon argues that the purpose of the subject roadblock was to look for any violation of state law or any city ordinance. In addition, McLendon alleges WPD conducted several roadblocks for the sole purpose of gaining federal grant money.[8]    Thus, according to

---

[8]Indeed, WPD Chief Frost testified, inter alia, that "[w]hat we do is, we get grant money down to do seat belts, DUIs. And we advise the officers we need to do these checkpoints, you know, write tickets, stuff like that. And once they do that, you know, do it in a well-lit area, whatever tickets they write or whatever incidents happened, they have to put a detailed report

McLendon, the roadblock was impermissible because it served the interest of general crime control and not to enhance the legitimate government interest of public safety.

¶17.     Although McLendon is correct in asserting that this Court will not uphold the validity of a roadblock if the justification for the seizure was based on the general interest of crime control, the purpose of the subject roadblock was not based on the general interest of crime control, but rather the roadblock was set up for the primary purpose of checking driver's licenses and insurance cards. *City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S. Ct. 447, 454, 148 L. Ed. 2d 333 (2000); *Dale*, 785 So.2d at 1105.   Thus, public concerns were served by the subject roadblock and the ultimate seizure of McLendon.

¶18.     In *Briggs v. State*, 741 So.2d 986, 989 (Miss. Ct. App. 1999), the Court of Appeals addressed the constitutionality of a roadblock.   Briggs was stopped at a routine roadblock, the purpose of which was to check for driver's licenses and vehicle registration.   *Id*. at 988.   When an officer approached Briggs vehicle, the officer smelled alcohol.    *Id.*    As a consequence, Briggs was transported to the jail and administered an intoxilyzer test, which Briggs failed, and thereafter, Briggs was convicted of DUI, third offense. *Id.*

¶19.     On appeal, Briggs contested the constitutionality of the roadblock.   *Id.* at 989. The Court of Appeals explained that the State "arguably has an interest in ensuring that drivers of vehicles are properly licensed and that vehicles are properly registered and periodically inspected."   *Id.*    Additionally, "it is the primary purpose which determines whether a roadblock

on my desk.  And we put that in a file so when we send it off to Jackson, to let them know we have done what we supposed to do."

9

is constitutional." ***Edmond***, 531 U.S. at 44; ***Dale***, 785 So.2d at 1105. We agree with the reasoning of ***Briggs*** and adopt this holding of the Court of Appeals. Since the primary purpose of the WPD roadblock was to check for driver's licenses and insurance cards, and since the primary purpose determines whether a roadblock is constitutional, we agree with the trial court that there was a public concern served by the seizure of McLendon.

¶20. We must also consider "the degree to which the seizure advances the public interest." ***Brown***, 443 U.S. at 50-51; ***Dale***, 785 So.2d at 1104. In ***Dale,*** just as in today's case, the Court was required to apply the three-prong balancing test in ***Brown***. ***Dale***, 785 So.2d at 1104 (quoting ***Brown***, 443 U.S. at 50-51). With regard to the second prong of the balancing test, the Court of Appeals in ***Dale*** stated "[t]he procedure of stopping each driver is a very effective means of determining whether drivers are properly licensed. By doing so, many people are stopped, and each person's license is examined. This is far more effective than the random stops the Supreme Court outlawed in the ***Prouse*** case." ***Dale***, 785 So.2d at 1106 (citing ***Delaware v. Prouse***, 440 U.S. 648, 663, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979)). Therefore, the Court of Appeals in ***Dale*** determined that a roadblock which stops every vehicle passing through the roadblock was not "random" and served "the government's interest in making sure the people on the State's roads are properly licensed." ***Id.*** at 1106. We likewise adopt this holding of the Court of Appeals. ***Dale***, 785 So.2d at 1106.

¶21. Based on the sound reasoning of ***Dale***, McLendon's argument that the subject roadblock should be considered random because several factors pertaining to the roadblock were solely

10

within the officers' discretion lacks merit. Although no written policies regarding the procedure for setting up a roadblock were in place, the WPD officers were permitted to choose the destination, time, and length of the roadblock; and no logbooks were kept detailing how many cars were stopped or given tickets. *Dale* to stands for the proposition that when every vehicle traveling through the roadblock is stopped, as opposed to a random stopping of only some vehicles, the officers' discretion has been effectively removed, thus likewise removing as well any potential unconstitutionality of the subject roadblock. *Dale*, 785 So.2d at 1106. In today's case, he was not the unfortunate victim of a random stop at the roadblock, but instead McLendon was stopped because the officers were consistently and indiscriminately stopping every vehicle coming through the roadblock.

¶22. Finally we must consider "the severity of the interference with [McLendon's] individual liberty." *Brown*, 443 U.S. at 50-51; *Dale*, 785 So.2d at 1104. McLendon relies on *Prouse* to assert his argument that to permit a field officer to determine, at his discretion, the location, time, or duration of a sobriety checkpoint without any legitimate bases for that determination would be to sanction the kind of unconstrained and standardless discretion which the United States Supreme Court sought to proscribe in *Prouse*, 440 U.S. at 661. However, *Prouse* can be distinguished from the case at bar. *Prouse* involved a "random" license stop. *Id*. at 650. An on-duty patrolman arbitrarily decided to pull over the respondent in *Prouse* without observing any violation of the law or suspicious activity. *Id.* The patrolmen testified he merely decided

11

to stop the driver and check the driver's license and registration. *Id.* Not until the driver was already pulled over did the patrolman smell marijuana. *Id.*

¶23. The Supreme Court in *Prouse* held that "a random stop of a motorist in the absence of specific articulable facts which justify the stop by indicating a reasonable suspicion that a violation of the law has occurred is constitutionally impermissible and violative of the Fourth and Fourteenth Amendments to the United States Constitution." *Prouse,* 440 U.S. at 651 (quoting 382 A.2d 1359, 1364 (1978)). The Court also noted that "'the issue of the legal validity of systematic, roadblock-type stops of a number of vehicles for license and vehicle registration check is not now before the Court.'" *Prouse,* 440 U.S. at 651 (quoting 382 A.2d 1359, 1362 (1978)). In the instance case, McLendon was stopped during a systematic, stationary roadblock in which every vehicle passing through was stopped.

¶24. McLendon further asserts the WPD officers, along with the MHP officers, were given unbridled discretion, and that there was no particular standard of setting up roadblocks. McLendon claims the roadblock site had not been determined by policy-making officials and no logbooks were kept concerning the operation of the roadblocks. However, McLendon fails to recognize that while there were no written guidelines or set procedures in place, the officers stopped every single vehicle which came through the roadblock. Thus, there was no unbridled officer discretion since the officers did not choose who to stop and who not to stop. We also note that we have previously upheld the constitutionality of a roadblock where there were no set procedures or guidelines in place for the roadblocks. *Drane v. State*, 493 So.2d 294, 296-

12

97 (Miss. 1986). We held that by stopping every vehicle the officers' "uncontrolled" discretion was removed. *Id.* Therefore, we unquestionably classify the subject roadblock in today's case as routine and not "random."

¶25. Accordingly, the intrusion did not severely interfere with McLendon's individual liberty. For the reasons discussed, we conclude that the State's interest in performing the subject roadblock on January 15, 2005, substantially outweighs the minimal intrusion on McLendon's individual liberty. Thus McLendon's "seizure" was not violative of the Fourth Amendment to the United States Constitution or Miss. Const. art. 3, § 23 (1890). For the reasons stated, we find McLendon's assertion that the trial court erred in denying his motion to suppress evidence is without merit.

¶26. As to the alternative prayer for dismissal found in McLendon's motion to suppress, we must consider the trial judge's denial of McLendon's request for a dismissal. We have recently reiterated our well-established standard of review of a trial court's ruling on a motion to dismiss. In *Scaggs v. GPCH-GP, Inc.*, 931 So.2d 1274, 1275 (Miss. 2006), we stated:

> When considering a motion to dismiss, this Court's standard of review is de novo. "When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So.2d 1234 (Miss. 1999)(citing *T.M. v. Noblitt*, 650 So.2d 1340, 1342 (Miss. 1995)). This Court will not disturb the findings of the trial court unless they are manifestly wrong, clearly erroneous or an erroneous legal standard was applied. *Bell v. City of Bay St. Louis*, 467 So.2d 657, 661 (Miss. 1985).

13

*Id.* at 1275. This de novo standard of review is likewise applicable to a defendant's motion to dismiss in a criminal case. In adopting in toto our discussion concerning McLendon's claim of trial court error in denying his motion to suppress evidence, we find that the trial court did not err in denying McLendon's alternative prayer for dismissal. If we had found, consistent with McLendon's assertion, that the subject road block was unconstitutional, thus suppressing all evidence seized as a result of the roadblock, we could have stated with reasonable certainty that McLendon's motion to dismiss the DUI charge against him would have merit. However, inasmuch as we have found that the subject roadblock was not unconstitutional, it likewise logically follows that McLendon's alternative motion to dismiss is unquestionably devoid of merit.

¶27. In sum, having found the two sub-parts of this issue to be without merit, we now find that the issue, in its entirety, is without merit.

## II. WHETHER A PROPER FOUNDATION WAS LAID THUS PERMITTING THE STATE TO INTRODUCE THE RESULTS OF THE INTOXILYZER TEST

¶28. As with Issue I, since we are again reviewing a trial court's ruling on the admissibility of evidence, we apply an abuse of discretion standard. *Culp*, 933 So.2d at 274. *See also **Miss. Transp. Comm'n v. McLemore***, 863 So.2d 31, 34 (Miss. 2003); ***Beech v. Leaf River Forest Prods., Inc.***, 691 So.2d 446, 448 (Miss. 1997). Additionally, "[t]he discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence." ***Beech***,

14

691 So.2d at 448 (citing *Johnston v. State*, 567 So.2d 237, 238 (Miss. 1990)). *See* Miss. R. Evid. 103(a).

¶29. McLendon asserts the State failed to provide sufficient evidence to properly lay the foundation for the results of the intoxilyzer test to be admitted into evidence. However, at trial McLendon made no objection to the operational checklist of the completed test being admitted into evidence. By failing to properly object to the admission of evidence at trial, McLendon did not preserve his claim that the trial court erred by improperly allowing the intoxilyzer results into evidence. *Spicer v. State*, 921 So.2d 292, 309 (Miss. 2006) (citing *Williams v. State*, 684 So.2d 1179, 1203 (Miss. 1996)). Despite McLendon's waiver of this issue on appeal, we will, alternatively, address the merits of this issue.

¶30. McLendon asserts that trooper Ross should not have been allowed to testify with regards to the intoxilyzer results since he recorded the result as a test refusal in the logbook. McLendon contends that it was prejudicial error for the trial court to allow trooper Ross to testify that McLendon actually had a breath-alcohol content of 0.13% based on an un-logged intoxilyzer test. Even if McLendon were correct in asserting that the trial judge erred in allowing trooper Ross's testimony (an error which we do not find), such error was harmless beyond a reasonable doubt. The State had already entered into evidence the printout from the completed test. Likewise, in the end, McLendon, himself, through counsel during the cross-examination of trooper Ross, offered Uniform Traffic Ticket No. 6-067326, which trooper Ross had issued to McLendon, and this ticket noted that McLendon registered 0.13%. Therefore, trooper Ross's testimony specifically stating the result as being a breath-alcohol

15

content of 0.13% was not unfairly prejudicial to McLendon. *See **Palmer v. City of Oxford***, 860 So.2d 1203, 1209-10 (Miss. 2003).

¶31. Next, McLendon contends trooper Ross did not administer the intoxilyzer test in a scientifically acceptable manner. However, we again state that the trial judge cannot be put in error on a matter which was not presented to him for decision. ***Estate of Steven v. Wetzel,*** 762 So.2d 293, 296 (Miss. 2000); ***Parker v. Miss. Game & Fish Comm'n***, 555 So.2d 725, 730 (Miss. 1989); ***Cossit v. Federated Guar. Mut. Ins. Co.***, 541 So.2d 436, 446 (Miss. 1989); ***Crenshaw v. State***, 520 So.2d 131, 134-35 (Miss. 1988); ***Ponder v. State***, 335 So.2d 885 (Miss. 1976); *See also **Harrison v. State***, 534 So. 2d 175, 181 (Miss. 1988). Since he did not initially raise this issue in the trial court, McLendon is procedurally barred from asserting the issue today. Procedural bar notwithstanding, even considering this issue on its merits, the totality of the record reveals no merit to this assertion. As correctly pointed out by the State in its brief, "[t]hat [Ross] may have failed to note the result of the second test in the log hardly suggests that the test itself was somehow invalidly administered. The logbook entries have nothing whatsoever to do with the reliability of the test itself." We agree. The trial court committed no error in admitting this evidence.

¶32. In sum, we find this second issue to have no merit.

16

### III.  WHETHER THE CIRCUIT COURT ERRED BY DENYING McLENDON'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT, AND/OR A NEW TRIAL

¶33.  After a bench trial, the Wayne County Circuit Court entered a judgment finding McLendon guilty of DUI, First Offense.  Thereafter, McLendon, through counsel, timely filed the customary j.n.o.v. motion, with an alternative request for a grant of a new trial in the event the trial court denied his j.n.o.v. motion.  The trial court subsequently entered an order denying McLendon's post-trial motions.

¶34.  We recently addressed the difference between a motion for a judgment notwithstanding the verdict, as opposed to a motion for a new trial.  While a motion for a judgment notwithstanding the verdict is considered with regards to the legal sufficiency of the evidence, a motion for a new trial delves into the overwhelming weight of the evidence. *Bush v. State*, 895 So.2d 836, 843 (Miss. 2005).  Therefore, McLendon's motion for a judgment notwithstanding the verdict and McLendon's motion for a new trial will be addressed separately with the proper application of the correct standard of review.

#### A.  Motion for a Judgment Notwithstanding the Verdict

¶35.  "The standard of review for a post-trial motion is abuse of discretion."  *Dilworth v. State*, 909 So.2d 731, 736 (Miss. 2005) (citing *Howell v. State,* 860 So.2d 704, 764 (Miss. 2003)).  We have consistently reiterated that a motion for a judgment notwithstanding the verdict turns on whether the verdict was based on the legal sufficiency of the evidence. *Bush*, 895 So.2d at 843.  In *Bush*, we explained that when determining whether the evidence is

sufficient to support a conviction, "the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.'" *Bush*, 895 So.2d at 843 (quoting *Carr v. State*, 208 So.2d 886, 889 (Miss. 1968)). The evidence is insufficient to sustain a conviction where it fails to meet this test. *Bush*, 895 So.2d at 843. Therefore, the applicable question is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dilworth*, 909 So.2d at 736 (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The reviewing court is not required "to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* (Emphasis in original).

¶36.    Furthermore, the proper remedy is for us to reverse and render only when the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty." *Dilworth*, 909 So.2d at 736; *Edwards v. State*, 469 So.2d 68, 70 (Miss. 1985). On the other hand, the evidence is deemed sufficient when the facts and inferences considered reveal a result in which "reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense." *Dilworth*, 909 So.2d at 736.

¶37. Having set forth the standard under which a trial court proceeds in ruling on a j.n.o.v. motion, we now review the trial court's denial of the j.n.o.v. motion by considering the evidence, as well as all reasonable inferences which may be drawn from the evidence, in the light most favorable to the State. In doing so, we unhesitatingly find that there was legally sufficient evidence for the trial court to find McLendon guilty of DUI, First Offense. This DUI charge against McLendon required the State to present evidence showing that McLendon violated Miss. Code Ann. § 63-11-30 (Rev. 2004). Section 63-11-30(1) states in pertinent part "[i]t is unlawful for any person to drive or otherwise operate a vehicle within this state who is under the influence of an intoxicating liquor." Thus, pursuant to the clear language of the statute, in order to find McLendon guilty of DUI First Offense, the State was required to prove beyond a reasonable doubt (1) that McLendon was operating a motor vehicle, and (2) McLendon was under the influence of intoxicating liquor. Miss. Code Ann. § 63-11-30(1) (Rev. 2004). *See **McCool v. State***, 930 So.2d 465, 467 (Miss. Ct. App. 2006).

¶38. The State introduced into evidence the testimony of two officers who identified McLendon as driving a motor vehicle. McLendon was traveling down Highway 184 in the City of Waynesboro. McLendon approached a routine roadblock operated by the WPD where he was detained by WPD Officer Macy Torrey and MHP state trooper Holt Ross. It is undisputed that McLendon was driving a motor vehicle on the night of January 15, 2005.

¶39. While it is undisputed that McLendon was operating a motor vehicle, McLendon asserts that the State failed to make out its case since the State lacked sufficient admissible proof of McLendon's intoxication. We have already determined that the trial court was not in error for

19

considering the testimony of trooper Ross as well as the printout from the completed intoxilyzer test and the uniform traffic ticket, which established that McLendon had a breath-alcohol content of 0.13%. Additionally, officer Torrey testified that the field sobriety test was given on the basis of the smell of the intoxicating beverage on McLendon's breath. In viewing the evidence in the light most favorable to the verdict, we find that the State proved beyond a reasonable doubt each element of the DUI charge. Thus, we find that the trial court did not err in denying McLendon's motion for a judgment notwithstanding the verdict. This sub-issue is without merit.

### B. Motion for a New Trial

¶40. By contrast, a motion for a new trial requires "'[a] greater quantum of evidence favoring the State.'" *Dilworth*, 909 So.2d at 737 (quoting *Pharr v. State*, 465 So.2d 294, 302 (Miss. 1984)). Under this standard, reversal is warranted if the lower court abused its discretion in denying the motion for a new trial. *Dilworth*, 909 So.2d at 737 (citing *Howell,* 860 So.2d at 764; *Edwards*, 800 So.2d at 464; *Sheffield v. State,* 749 So.2d 123, 127 (Miss. 1999)). Accordingly, we defer to the discretion of the trial judge, and "[w]e will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Groseclose v. State*, 440 So.2d 297, 300 (Miss. 1983). Reversal according to the above stated standard, unlike reversal based on insufficient evidence, does not imply that acquittal was the only proper verdict. *Bush,* 895 So.2d at 844. Instead the standard proposes that, as the "thirteenth

juror," the Court simply disagrees with the jury's resolution of the conflicting testimony – a difference of opinion tantamount to one among the jurors themselves. *Id*. This being said, the power to grant a new trial should be invoked only in exceptional cases where the evidence preponderates heavily against the verdict. *Id*. (citing *Amiker v. Drugs for Less, Inc.*, 796 So.2d 942, 947 (Miss. 2000)).

¶41. Sitting as the hypothetical "thirteenth juror", we do not conclude that an unconscionable injustice occurred based on the evidence presented. Although trooper Ross admittedly failed to properly log McLendon's intoxilyzer test results, there is nothing in the record to dispute the State's evidence. What does appear in the record is trooper Ross's testimony, McLendon's intoxilyzer test, and the uniform traffic ticket revealing that McLendon registered a breath-alcohol content of 0.13%. Viewing all the evidence in the light most favorable to the verdict, we find the trial court did not err in its denial of McLendon's motion for a new trial. Stated differently, we are unquestionably compelled to find from the record that, as a matter of well-established law, the judgment of guilty rendered by the trial judge is not so contrary to the overwhelming weight of the evidence that we would be sanctioning an unconscionable injustice by allowing the judgment of guilty to stand. Therefore, the judgment of guilty as entered by the trial court is well beyond our authority to disturb. *Bush*, 895 So.2d at 844. We thus conclude that since the trial court did not abuse its discretion in denying McLendon's motion for a new trial, this sub-issue is likewise devoid of merit.

¶42. In sum, this issue, both as to the trial court's denial of the j.n.o.v. motion and the new trial motion, is wholly without merit.

21

## CONCLUSION

¶43.    We find that the trial court committed no error in (1) finding the subject roadblock to be constitutionally permissible; (2) admitting into evidence the results of the intoxilyzer test; and, (3) denying the motion for a judgment notwithstanding the verdict, or alternatively, for a new trial.  We thus affirm the Wayne County Circuit Court's judgment.

¶44.    **CONVICTION OF DUI FIRST OFFENSE AND A PAYMENT OF A FINE OF $500.00 PLUS COURT COSTS OF $190.50, FOR A TOTAL OF $690.50, AFFIRMED.**

**SMITH, C.J., WALLER, P.J., DIAZ, EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR.  GRAVES, J., CONCURS IN RESULT ONLY.  COBB, P.J., NOT PARTICIPATING.**